# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Raymond P. Moore

Case No. 16-cv-00548-RM-KLM

ELIZABETH ALVAR, *personal representative of the estate of Patrick O'Grady*,

    Plaintiff,

v.

JONATHAN KAY,

    Defendant.

---

# OPINION AND ORDER
---

On August 31, 2016, plaintiff Elizabeth Alvar ("plaintiff"), as the personal representative of the estate of Patrick O'Grady ("Patrick"), filed an Amended Complaint against defendant Jonathan Kay ("defendant"),[1] asserting a single claim against defendant of excessive force in violation of the Fourth Amendment to the U.S. Constitution. (ECF No. 38.)

On June 16, 2017, defendant filed the currently pending motion for summary judgment ("the motion for summary judgment") (ECF No. 78). Plaintiff has filed a response (ECF No. 90), and defendant has filed a reply (ECF No. 94). In the motion for summary judgment, defendant raises the defense of qualified immunity. (ECF No. 78.)

---

[1] The Amended Complaint also named the City of Fountain as a defendant, but the City of Fountain has since been dismissed with prejudice from this action (ECF Nos. 88, 91). Therefore, all references to defendant herein shall be solely to Jonathan Kay.

## I. Legal Standard

Summary judgment is appropriate "when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Initially, the movant bears the "responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986). If this burden is met, then the non-moving party must set forth specific facts showing that there is a genuine dispute for trial. *Id*. at 324. A fact is material if it has the potential to affect the outcome of a dispute under applicable law. *Ulissey v. Shvartsman*, 61 F.3d 805, 808 (10th Cir. 1995). An issue is genuine if a rational trier of fact could find for the non-moving party. *Adams v. Am. Guarantee & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000).

In performing this analysis, the factual record and any reasonable inferences therefrom are construed in the light most favorable to the non-moving party. *Id*. However, a mere "scintilla of evidence" is insufficient to avoid summary judgment. *Turner v. Public Service Co. of Colorado*, 563 F.3d 1136, 1142 (10th Cir. 2009). Instead, a non-movant "must proffer facts such that a reasonable jury could find in her favor." *Id*.

## II. Qualified Immunity

To overcome the presumption of immunity created by the assertion of qualified immunity, a plaintiff must show: (1) the defendant's alleged conduct violated a constitutional right; and (2) the right was clearly established at the time of the conduct, "such that every reasonable officer would have understood, that such conduct constituted a violation of that right." *Perea v. Baca*, 817 F.3d 1198, 1202 (10th Cir. 2016) (quotation omitted). For a law to be clearly established, ordinarily,

"there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Buck v. City of Albuquerque*, 549 F.3d 1269, 1277 (10th Cir. 2008) (quotation omitted). In the context of claims under the Fourth Amendment for excessive force, though, "there will almost never be a previously published opinion involving exactly the same circumstances." *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007). As a result, the pertinent inquiry is "whether the law put officials on fair notice that the described conduct was unconstitutional." *Id*. (quotation and internal quotation omitted). "The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Id*. (quotation omitted).

In determining whether a defendant is entitled to qualified immunity, the facts are still viewed in the light most favorable to the non-movant. *Buck*, 549 F.3d at 1279, 1286-87. The sole inquiry is whether a plaintiff's factual allegations are "sufficiently grounded in the record such that they … will serve as the foundation for answering the *legal* question before the court." *Cox v. Glanz*, 800 F.3d 1231, 1243 (10th Cir. 2015) (quotation omitted) (emphasis in original).

## III. Excessive Force

Courts evaluate excessive force claims under an objective reasonableness standard, judged from the perspective of a reasonable officer on the scene. *Perea*, 817 F.3d at 1202.

> To determine if an officer's actions were objectively reasonable, we carefully consider the totality of the circumstances, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Id*. (citing *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865 (1989)) (quotation omitted).

In the context of an officer's use of deadly force, such force is considered reasonable "only if a reasonable officer in [the officer's] position would have had probable cause to believe that there was a threat of serious physical harm to themselves or to others." *Clark v. Bowcutt*, 675 F. App'x 799, 806 (10th Cir. Jan. 5, 2017) (quotation and emphasis omitted).

> In assessing the degree of threat the suspect poses to the officer, we consider factors that include, but are not limited to: (1) whether the officers ordered the suspect to drop his weapon, and the suspect's compliance with police commands; (2) whether any hostile motions were made with the weapon towards the officers; (3) the distance separating the officers and the suspect; and (4) the manifest intentions of the suspect.

*Id*. (quotation omitted). However, if threatened with a weapon, an officer may use deadly force. *Id*.

## IV. Discussion[2]

The motion for summary judgment, at least with respect to whether defendant was threatened with a weapon, is premised upon defendant's version of events. (ECF No. 78 at 5-13.) There is another version of events: plaintiff's. As far as the Court is concerned, the issue that must be resolved before any other is whether these two versions of events are in conflict. If they are, then the Court must accept plaintiff's version at this stage in proceedings. *See Adams*, 233 F.3d at 1246. In that regard, defendant purports to accept as true plaintiff's version of events. (ECF No. 78-13 at ¶ 33 n.1). To understand whether that is the case, the Court sets forth the two versions of events as they pertain to the shooting of Patrick.

The parties' versions of events (for summary judgment purposes) begin in similar fashion. On either September 21 or September 22, 2015, Patrick—plaintiff's son—stole plaintiff's Dodge Avenger. (ECF No. 94-4 at ¶¶ 1, 3.) Plaintiff reported the car stolen to the police. (*Id*. at ¶ 4.) Defendant responded to plaintiff's home and took a report on the stolen car. (*Id*. at ¶ 5.) On

---

[2] The pertinent facts are set forth in the Court's discussion.

September 24, 2015, a physical disturbance was reported at plaintiff's residence. (*Id*. at ¶ 14.) Plaintiff called the police because she observed a young male, known as "M.S.," near her motorcycle with the ignition on. (*Id*. at ¶ 15.) As plaintiff talked to 911 dispatch, she walked back to her home. (*Id*. at ¶ 17.) As plaintiff walked towards her dining area, she saw Patrick. (*Id*. at ¶ 18.) Plaintiff did not tell Patrick that she was on the telephone with 911, and pleaded with him to give himself up to the police. (*Id*. at ¶ 19.) Patrick told plaintiff that he was going to take a shower, and plaintiff then went outside to await the police. (*Id*. at ¶ 21.) Defendant heard the call for service at plaintiff's residence, recognized the address, and volunteered to respond. (*Id*. at ¶ 22.) Defendant approached plaintiff's address and parked about one block away. (*Id*. at ¶ 23.) Plaintiff waved defendant into her residence, and defendant then exited his vehicle and approached plaintiff. (*Id*. at ¶¶ 24-25.) Defendant asked plaintiff if "he" was here, and plaintiff said "[y]es." (*Id*. at ¶ 25.)[3]

The parties' versions of events continue in agreement as events started to reach their climax. As plaintiff and defendant walked up the stairs, the door to the bathroom was closed. (*Id*. at ¶ 28.) At the top of the stairs, plaintiff opened the bathroom door with her left hand. (*Id*. at ¶ 29.) Defendant was immediately behind plaintiff when she opened the door. (*Id*.) At this time, defendant could see a male, who appeared to be naked, in the bathroom. (*Id*. at ¶ 30.) The male's back was turned to plaintiff and defendant. (*Id*.) Defendant had not drawn his duty weapon. (*Id*. at ¶ 31.) While the bathroom door was open, the male looked backwards over his left shoulder and defendant recognized him as Patrick. (*Id*. at ¶ 32.) Patrick saw defendant. The bathroom door was open for

---

[3] In response to this factual statement plaintiff asserts that a dispute exists because defendant's version of events differs from plaintiff's with respect to defendant asking plaintiff a question about whether "he" was here. (ECF No. 93 at ¶ 25.) However, as defendant correctly observes in reply to this factual statement, for present purposes, when the parties' versions of events differ, the Court must accept plaintiff's. (*See* ECF No. 94-4 at ¶ 25.) Thus, to the extent plaintiff raises similar objections to factual statements from defendant, the Court has accepted plaintiff's version of events.

5

two seconds, and then plaintiff closed the door. Plaintiff did not see a gun on the sink counter. (*Id*.) After plaintiff closed the bathroom door, defendant moved her to the left and re-opened the door about halfway, telling Patrick to get his underwear on. (*Id*. at ¶¶ 33.) Plaintiff was approximately one foot from defendant. (*Id*.) When defendant opened the bathroom door, plaintiff could not see Patrick. (*Id*. at ¶ 34.)

It is now that the parties' versions of events diverge. The Court provides defendant's version first, then plaintiff's. From defendant's perspective, Patrick then picked up a black Glock pistol from the sink in the bathroom, and pointed the gun (canted sideways) at defendant. (ECF No. 78-13 at ¶ 35.) Defendant pushed plaintiff away from the doorway, and stated that "[h]e's got a gun." (*Id*. at ¶ 36.) Defendant took one step to his right, removed his duty weapon from his left hip holster, and fired the weapon from his left hip. (*Id*.) As he fired, defendant noticed the bathroom door closing. (*Id*. at ¶ 37.) The bullet discharged from defendant's duty weapon struck Patrick in the head. This entire process occurred in two to three seconds. (*Id*.)

From plaintiff's perspective, the bathroom door then closed. (ECF No. 90-4 at 263:2-3.) Defendant and Patrick engaged in a "tug of war with the door." (*Id*. at 265:4-9.) During the tug of war, the door was opening only little amounts, about a couple of inches. (*Id*. at 266:10-11, 268:19-21.) The tug of war lasted four seconds. (*Id*. at 265:17.) Defendant then pushed plaintiff and said "[g]un." (*Id*. at 275:16-22.) Defendant then slid back a little to the right, drew his weapon, and shot once into the bathroom. (*Id*. at 265:17-19, 267:10-19, 268:9-16.)

Although defendant accepts as true for present purposes much of plaintiff's version of events, defendant does not accept the paragraph of events recited in the preceding paragraph. In the motion for summary judgment, defendant does not even mention that plaintiff testified that a tug of war

6

ensued between plaintiff and defendant. Instead, in addressing alleged disputed facts, defendant entirely mischaracterizes plaintiff's deposition testimony. Defendant asserts that, after plaintiff closed the bathroom door on the first occasion, she moved to her left to a position from which she could not see Patrick, and *then* defendant pushed plaintiff away and said "he's got a gun." (ECF No. 78 at 11.) As set forth *supra*, that is not plaintiff's version of events, as it misses out plaintiff's testimony that the bathroom door closed a second time, a tug of war ensued, and *then* defendant pushed plaintiff out of the way.

In his reply, defendant finally addresses plaintiff's testimony about a tug of war. Defendant concedes that the testimony is in dispute, but asserts that it is immaterial. (ECF No. 94 at 5.) In so arguing, defendant attempts to shoehorn the most important part of defendant's version of events—seeing Patrick point a gun at him—into the wider stream of plaintiff's version of events. Unfortunately, for defendant, the foot simply does not fit. Notably, defendant changes his testimony in explaining why the tug of war is immaterial, in asserting that defendant saw Patrick point a gun at him "*at a point when the door was open, even if only slightly*." (*Id.*) It is not, however, defendant's version of events that he saw Patrick point a gun at him when the bathroom door was *only slightly* open. Instead, for summary judgment purposes, it is defendant's position that the bathroom door was about halfway open. (ECF No. 78-13 at ¶ 33.)[4] Defendant continues with changing his version of events by suggesting that defendant observed Patrick with a gun prior to the bathroom door closing. (*See* ECF No. 94 at 5.) Nowhere in defendant's version of events is the bathroom door closing or beginning to close when defendant observed Patrick with a gun. Instead,

---

[4] Putting aside defendant's position at summary judgment, the argument made in defendant's reply is even further removed from defendant's actual own account of events. According to defendant, the bathroom door was *completely* open when Patrick picked up a gun and pointed it at defendant. (ECF No. 78-4 at ¶¶ 18-19.) In other words, there is no way that defendant's own account of events can be shoehorned into plaintiff's version.

only *as defendant fired his duty weapon* did he notice the bathroom door closing. (ECF No. 78-13 at ¶ 37.)

As important, although mentioning the tug of war, defendant continues to ignore its import, at least with respect to its effect on whether there is a dispute of facts. For example, defendant asserts that none of plaintiff's evidence speaks to what Patrick was doing once the bathroom door began to close. (ECF No. 94 at 5.) However, it simply does. Notably, the premise of defendant's argument is that the bathroom door was closing a second time when defendant observed Patrick with a gun pointed at him. Plaintiff's version of events directly refutes this because, according to plaintiff, when the bathroom door closed for a second time, defendant and Patrick engaged in a tug of war. In other words, defendant did not observe Patrick with a gun; defendant, instead, tried to re-open the bathroom door. Those two versions of events are simply not consistent, especially given that under plaintiff's version of events it was not until *after* the tug of war ended that defendant said gun, slide to his right, and fired his weapon. To the extent that defendant is arguing that defendant observed Patrick with a gun during or immediately after the tug of war, putting aside that plaintiff testified that the door only opened a couple of inches at most, there is simply no evidence in the record (including defendant's own testimony) that, that is what occurred.[5] Put another way, simply because defendant believes that he saw Patrick point a gun at him does not mean that defendant can

---

[5] In reply, defendant asserts that, if the Court finds a dispute over whether Patrick pointed a gun at him, plaintiff does not dispute that defendant saw Patrick *reach* for a gun. (ECF No. 94 at 10.) The Court disagrees, as the material to which defendant cites does not support such an assertion. Statement of fact 35 relates to the *pointing* of a gun. (*See* ECF No. 78-13 at ¶ 35.) Thus, it cannot be said, in responding to that fact, plaintiff conceded something that was not originally stated. As for plaintiff's response to the motion for summary judgment, the pertinent part relates to plaintiff picking out purported inconsistencies in defendant's testimony. (*See* ECF No. 90 at 13.) At no point does plaintiff concede any fact.

insert that fact into another witness' conflicting version of events at a moment that may favor defendant, such as when plaintiff admits that she could not see Patrick.

In summary, defendant and plaintiff's versions of events are diametrically opposed, and only one of them can carry the day. At this juncture, it is not the Court's place to say which version is more believable, it is simply to decide whether plaintiff's version is sufficiently grounded in the record. *See Cox*, 800 F.3d at 1243. Because plaintiff's version of events is based upon her own eyewitness account (just like defendant's), it is undoubtedly sufficiently grounded in the record. As a result, the Court assumes the truth of plaintiff's version of events for purposes of analyzing whether defendant used excessive force in shooting Patrick.

A. Violation of a Constitutional Right

1. Severity of the Crime

The parties agree that defendant was aware that Patrick had stolen his mother's car (ECF No. 94-4 at ¶¶ 4-5), which defendant concedes is a non-violent offense (ECF No. 78 at 7). Defendant also argues that Patrick committed a serious felony by pointing a weapon at defendant. (*Id.*) That, however, is not plaintiff's version of events. As discussed *supra*, there is simply no evidence in the record that defendant saw Patrick point a weapon at him after the tug of war between them had finished. As a result, given the non-violent nature of Patrick's offense, the Court finds that this factor weighs in plaintiff's favor. *See Casey v. City of Fed. Heights*, 509 F.3d 1278, 1285 (10th Cir. 2007) ("*Graham* establishes that force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest.").[6]

---

[6] The Court notes that neither party addresses whether theft of a motor vehicle is a misdemeanor or a felony under Colorado law.

### 2. Posing an Immediate Threat to Safety

Defendant's arguments in this regard are again premised upon defendant's version of events. (ECF No. 78 at 7-8.) To repeat, there is no evidence in the record that defendant saw Patrick point a gun at him after the two had finished their tug of war. Instead, plaintiff's version of events reflects that defendant and Patrick engaged in a tug of war, and then after the tugging was finished, defendant said gun and pushed plaintiff, and then defendant slid to his right and fired his weapon. Given that plaintiff testified that the bathroom door only opened a couple of inches at most during the tug of war, and defendant did not testify that he observed Patrick with a gun under the circumstances of the door being so narrowly opened, the Court cannot find on this record that defendant actually observed Patrick with a gun prior to shooting him. Put another way, simply because defendant said gun does not mean that he actually saw Patrick with one.

Instead, under plaintiff's version of events, at most it appears that Patrick was preventing defendant from re-opening the bathroom door. Because that does not involve an immediate threat to defendant's (or anyone else's) safety, the Court finds that this factor weighs in favor of plaintiff.

### 3. Resisting Arrest

As with defendant's other arguments, his argument with respect to this factor against rests upon accepting defendant's account that Patrick pointed a gun at him, and thus, attempted to violently resist arrest. (ECF No. 78 at 9.) The Court will not recount again why, for summary judgment purposes, this is wrong. Instead, and going forward, the Court will simply focus upon plaintiff's version of events. As mentioned *supra*, it appears that, at most, in engaging in the tug of war, Patrick prevented defendant from re-opening the bathroom door. In addition, nowhere in the record is there evidence that Patrick was placed under arrest or defendant attempted to do so.

Therefore, the Court cannot find that Patrick attempted to resist arrest when he engaged in the tug of war with defendant.[7] As a result, the Court finds that this factor weighs in plaintiff's favor.

### 4. Threat of Serious Physical Harm

As well as the reasons discussed *supra* with respect to Section IV(B), the Court finds for the following reasons that there was not a threat of serious physical harm to defendant due to Patrick's actions. First, defendant did not order Patrick to do anything other than to put on his underwear. Although defendant asserts that he did not have time to order Patrick to drop his weapon (ECF No. 78 at 9), as discussed *supra*, under plaintiff's version of events, (a) there is no record evidence that defendant saw Patrick holding a weapon, and (b) defendant had time after the tug of war finished to give orders to Patrick.

Second, under plaintiff's version of events, the most hostile Patrick's motions got were to hold the bathroom door closed while defendant tried to open it. The Court does not find such conduct to be hostile, at least not when construing the record in plaintiff's favor. Third, although there appears to be some dispute in the parties' testimony as to precisely how close defendant and Patrick were, the Court agrees with defendant that defendant and Patrick were in close proximity to each other. Therefore, although there was a door between the two, the Court finds that this factor weighs in defendant's favor. Of all the factors the Court has discussed here, though, that is the only one that weighs in defendant's favor.

Fourth, under plaintiff's version of events, and construing the same in plaintiff's favor, the only intention that Patrick manifested was his desire to keep the bathroom door closed. Only under defendant's version of events did Patrick manifest a lethal intent, and, as discussed, that version is

---

[7] Construing the record in plaintiff's favor, the Court could instead find that Patrick engaged in the tug of war because he wanted the bathroom door to remain closed while he put on his underwear.

directly in conflict with plaintiff's.[8] Therefore, the Court finds that this factor weighs in plaintiff's favor. In sum, therefore, the Court finds that there was not a threat of serious harm to defendant from Patrick's actions.

### 5. Conclusion

In light of the Court's discussion *supra*, the Court finds that defendant used excessive force in violation of the Fourth Amendment when he shot Patrick after the two engaged in a tug of war over a bathroom door. Based upon plaintiff's version of events, there was no threat of any sort to defendant and Patrick had committed only a non-violent offense. In addition, there is no evidence in the record that Patrick attempted to resist arrest or that defendant observed Patrick with a weapon after or during the tug of war.[9]

### B. Whether the Constitutional Right was Clearly Established

Prevailing constitutional principles establish that deadly force is not justified when a suspect "poses no immediate threat to the officer and no threat to others …." *Tennessee v. Garner*, 471 U.S. 1, 11, 105 S.Ct. 1694 (1985). Here, having *supra* accepted plaintiff's version of events as true and construed all inferences in her favor, the Court has little pause in finding that defendant egregiously violated the aforementioned constitutional principle. More specifically, the Court finds that it was

---

[8] The Court also notes that evidence related to text messages Patrick sent before the shooting and statements from M.S., which defendant relies upon to demonstrate Patrick's manifest intentions to evade capture and harm law enforcement (*see* ECF No. 94 at 14-15), are only relevant when viewed in conjunction with defendant's version of events. This is because, under plaintiff's version, Patrick did not manifest any intent to harm law enforcement. As for evading capture, arguably, the tug of war over the bathroom door could be construed as an attempt to evade capture, but only when the record is viewed in defendant's favor. When it is viewed in plaintiff's favor, the struggle over the bathroom door could be seen simply as Patrick's attempt to put on his underwear with a closed door.

[9] The Court's analysis does not change merely because a black Glock pistol was found behind the door of the bathroom following the shooting of Patrick. (*See* ECF No. 94-4 at ¶ 39.) Even if the Court assumes that Patrick had access to a gun in the bathroom, this does not mean that defendant saw Patrick point it at him or even that defendant saw the gun.

obviously egregious for defendant to shoot Patrick after the two engaged in a tug of war over a bathroom door when Patrick posed no threat of any sort to defendant or anyone else, Patrick had not attempted to resist arrest, and Patrick had committed only a non-violent offense. In that light, there was simply no ground for a reasonable officer to believe that a legitimate justification existed for shooting Patrick, at least when, as here, defendant has presented no evidence that he saw Patrick point a weapon at him during or immediately after the tug of war. *See Casey*, 509 F.3d at 1286 ("an officer's violation of the *Graham* reasonableness test is a violation of clearly established law if there are no substantial grounds for a reasonable officer to conclude that there was legitimate justification for acting as [he] did.") (quotation omitted).

As a result, although the Court acknowledges that it has been unable to find a case exactly on point with the facts of this one, the Court finds that defendant was on "fair notice" that, in shooting Patrick, he violated clearly established constitutional law against the use of excessive force. *See Garner*, 471 U.S. at 11.[10]

**V.     Conclusion**

For the reasons discussed herein, the Court DENIES defendant's motion for summary judgment (ECF No. 78).

---

[10] The Court also notes its doubt whether summary judgment in any form is appropriate in this case, in light of the Court's findings that material issues of disputed fact—notably, plaintiff and defendant's opposing accounts of the events—exist as to whether defendant's conduct was objectively unreasonable. *See Maestas v. Lujan*, 351 F.3d 1001, 1008 (10th Cir. 2003) ("'Where, as here, the legal question of qualified immunity turns upon which version of facts one accepts, the jury, not the judge, must determine liability.'") (quoting *Fisher v. City of Memphis*, 234 F.3d 312, 317 (6th Cir. 2000)).

**SO ORDERED.**

DATED this 27th day of February, 2018.

                                          BY THE COURT:

                                          _____
                                          RAYMOND P. MOORE
                                          United States District Judge